UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| IN RE: BIG HORN LAND & CATTLE CO, LLC ) | |
| ) | |
| RUDOLFO RODRIGUEZ ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | CIVIL NO. 1:10cv391-WCL |
| ) | |
| YVETTE KLEVEN, TRUSTEE, ) | |
| ) | |
| Appellee. ) | |

## OPINION AND ORDER

This matter is before the court on an appeal from the bankruptcy court, pursuant to Bankruptcy Rules 8001(a) et seq. and 28 U.S.C. § 158(a)(1), from a final order of the bankruptcy court.

The appellant, Rudolfo Rodriguez ("Rodriguez"), filed his brief on November 24, 2010. The appellee/trustee, Yvette Kleven ("Trustee"), filed her response brief on December 6, 2010.

For the following reasons, the order of the bankruptcy court will be affirmed.

## Discussion

The Debtor, Big Horn Land & Cattle Co., LLC, ("Big Horn"), filed Chapter 11 Bankruptcy on February 3, 2009 after losing a State Court action, Case No. 44CO1-0711-CC-071, in LaGrange County, Indiana. The Bankruptcy case was converted to a Chapter 7.

After the bankruptcy filing, an appeal was taken by Big Horn in the Indiana Court of Appeals, Case No. 44A03-0904-CV-152, and that appeal has been stayed pending the bankruptcy trustee's decision to prosecute or dismiss that appeal. The state court case was a consolidated matter in which the land contract sellers, David and Deemia Wehner, sued Big

Horn for foreclosure. Big Horn had filed a separate lawsuit claiming breach of contract, unjust enrichment and fraud in the inducement that was consolidated with the foreclosure action.

At trial, Big Horn elected the remedy of rescission based upon the alleged fraud of the Wehners that was discovered after Big Horn took possession, and when Big Horn sought to build on one of the purchased/advertised parcels. The other theories alleged in Big Horn's complaint were withdrawn and not tried to the court. The trial court granted foreclosure to the Wehners and denied rescission of the contract. A timely appeal was then filed.

Once the bankruptcy was filed, the Wehners initially asked the Trustee to abandon the property, but later made an agreement to pay $4,000 for the Trustee to dismiss the state court appeal. The Trustee filed her first Motion to Approve that Compromise settlement for $4,000 on June 4, 2009. Rodriguez filed his Objection to that first compromise, and a trial was held on October 8, 2009 with a subsequent briefing scheduled ordered.

The Honorable, Robert E. Grant, Bankruptcy Judge for the Bankruptcy Court of the Northern District of Indiana, Fort Wayne Division, entered his order denying the Trustee's First Motion to Compromise on March 22, 2010. Subsequently, on June 24, 2010, the Trustee filed her Second Motion to Compromise. Rodriguez filed his objection to that Second Motion for Compromise on July 16, 2010. A trial was held on that Second Motion for Compromise on September 8, 2010. Judge Grant entered his order granting that Motion to Compromise and to dismiss the state court appeal on September 14, 2010. Rodriguez, as Creditor/Objector, filed his timely Notice of Appeal on September 27, 2010. Rodriguez also filed a Motion for Stay of the Dismissal of the state court appeal which was granted on October 20, 2010.

## Factual Background

Big Horn purchased 45.97 acres with a house on Land Contract from David and Deemia Wehner on September 8, 2006. (Exhibit 1, Joint Exhibit Book) According to that contract, no title work or surveys were to be provided until full payment was made by Big Horn after 24 months on September 15, 2008.

The property was advertised for sale at auction in 3 buildable tracts/parcels in any combination of parcels or as a whole. (Exhibit 2, Joint Exhibit Book) During the auction, Rodriguez, as the sole member of Big Horn, was furnished with percolation tests for the parcels to show suitability for building, and he was driven by auction agents to the other parcels where flags were placed to show potential home locations. (Exhibit 3, Joint Exhibit Book; transcript pp. 52-58) After the auction and prior to the time of signing the Land Contract, the Wehners provided Big Horn with the required Seller's Residential Real Estate Sales Disclosure. (Exhibit 9, Joint Exhibit Book)

While in possession of the land and house, Rodriguez made payments to the Wehners of $94,500.00, before stopping further payments due to the issues raised in the State Court action set forth below. (Exhibits E, G, Joint Exhibit Book; transmitted record document 2-1 p. 17 of 98)

Desiring to commence building on the other parcels, Rodriguez contacted the LaGrange County Plan Commission and was advised that the property the Wehners had sold him had only 30' of easement access and 50' was needed which precluded building on the other home sites. (Exhibits G, 6, 15 Joint Exhibit Book, transcript p. 55) Subsequently, after stopping payment, the underlying and consolidated actions were filed in LaGrange County.

During discovery, it was also learned that David Wehner had lied on the Real Estate

3

disclosure form. (Exhibit 9, Joint Exhibit Book) Contrary to the specific question on the real estate disclosure form about Notices from government agencies, Mr. Wehner failed to disclose the existence of a letter from the Indiana DNR, dated April 5, 2000. The DNR had addressed Mr. Wehner in response to his letter, and indicated that his property was in a flood plain, and without further proof, no new residential construction was permitted, and any existing residences might need flood insurance. (Exhibits 8, G, Joint Exhibit Book ) Additionally, during discovery, it was learned that Wehner also failed to disclose on that form that the house was converted from a barn without any building permit and also contrary to that DNR letter. (Exhibits E, G, 9, Joint Exhibit Book)

At trial, Steve McKowen, the Wehners' auctioneer and real estate agent, testified that the DNR letter and flood plain comments were material facts that the Wehners should have disclosed. (Exhibit 15, Joint Exhibit Book) McKowen also testified that the first contract required disclosure of the need for flood insurance, and contained a clause to cancel if the land was in a flood plain.(Exhibit 15, Joint Exhibit Book)

The state court trial judge granted foreclosure to the Wehners, and denied Rodriguez's claim to rescind the contract for fraud in the inducement. The trial judge entered judgment on the Proposed Findings of Fact and Conclusions of Law as submitted by counsel for the Wehners. (Exhibits E, G, 10 Joint Exhibit Book)

Big Horn filed its appeal after a denial of a Motion to Correct Errors. The facts recited above are the pertinent facts related to the stayed state court appeal that were before the Trustee.

4

## Bankruptcy Case Proceedings

The original filing was a Chapter 11, converted to Chapter 7. (Exhibits A, C, Joint Exhibit Book) The Wehners filed a Motion for Relief from Stay and Abandonment of the Real Estate that was later withdrawn by the First Application for Compromise filed by the Trustee. (Exhibit E Joint Exhibit Book)

On May 18, 2009, counsel for Rodriguez sent an email to the bankruptcy trustee's attorney, Doug Adelsperger. (Exhibits 12, Joint Exhibit Book) That email advised of the pendency of the state court appeal and Big Horn's request for rescission of the land contract due to fraud in the inducement. That email was answered by Mr. Adelsperger the same day advising that the questions posed could not be answered until the Trustee conducted her examination of the debtor, Big Horn.

Later, in the late May/June 2009 time frame, Rodriguez's counsel also offered to pay the same $4,000 as offered by the Wehners or even pay $5,000, which was rejected by Mr. Adelsperger. (Exhibit 26 email of June 21, 2010, Joint Exhibit Book) Then on June 2, 2009, Big Horn filed a Motion to Continue that Creditors meeting until June 9, 2009. (transmitted record document 2-1, doc. # 50 docket report p. 6 of 98)

On June 4, 2009, Yvette Kleven, Trustee for Big Horn, filed her First Application to Approve Compromise. The Compromise requested that the Court approve the acceptance of $4,000 from the Wehners, and dismiss the pending appeal that had already been initiated in the Indiana Court of Appeals as Cause no. 44A03-0904- CV-152. (transmitted record document 2-1, pp. 14-16 of 98; transmitted record document 2-1, doc. # 52 docket report p. 6 of 98; Exhibit 12, Joint Exhibit Book) Rodriguez objected to the First Application on June 24, 2009. (transmitted

record document 2-1, pp. 17-23 of 98)

A trial was held on October 8, 2009, and after briefing, the Judge Grant entered his findings and order on March 22, 2010 denying the First Application for Compromise. (transmitted record document 2-1, pp. 54-62 of 98, docket report p. 10 of 98)

Immediately after the court's denial of that compromise, counsel for Rodriguez sent an email to Mr. Adelsperger on March 24, 2010, asking for permission to prosecute the appeal at no cost to the estate, as Mr. Rodriguez would pay the fees. (Exhibit 17, Joint Exhibit Book) Mr. Adelsperger advised that the Trustee had contacted the law firm of Van Gilder & Tryznka to evaluate the state court appeal. (Exhibits 17, Joint Exhibit Book; trial transcript p. 12) That firm then contacted Rodriguez's attorney via email and telephone to obtain records and information for their review and ultimate memorandum dated May 4, 2010. (Exhibits L, 18, Joint Exhibit Book)

On or about May 25, 2010, after learning once again that the Trustee did not want to expend funds to appeal, counsel for Rodriguez sent another email to Mr. Adelsperger reciting some facts, offering to appeal at no cost to the estate, asking the Trustee to abandon the claim, and finally asking that if the Trustee was once again going to enter into settlement negotiations with the Wehners, that Rodriguez, as a larger unsecured creditor than the Wehner's, be given the same opportunity to make a settlement offer and still prosecute the appeal. (Exhibit 19, Joint Exhibit Book)

On June 7, 2010, Mr. Adelsperger responded via email that the Trustee did not intend to retain the services of Rodriguez's attorney, and "intends to ask the Court to approve the original settlement. A detailed Motion will be filed." (Exhibit 20, Joint Exhibit Book) On behalf of

Rodriguez, an immediate email response was sent asking why Rodriguez had not been permitted to make an offer before the decision was made to accept Wehner's same $4,000 that had already previously been rejected by the Court. (Exhibit 20, Joint Exhibit Book) At that time, Mr. Adelsperger then inquired about a possible offer from Rodriguez. A matching offer of $4,000 was made on June 7, 2010 at 1:13 p.m. with the added benefit that should the appeal provide recovery funds, then those funds would also be property of the estate. (Exhibit 20, Joint Exhibit Book) Mr. Adelsperger immediately rejected that offer at 1:22 p.m. on Monday, June 7, 2010, and instead advised that if Rodriguez paid $8,000, then he would recommend that amount to the Trustee. The only other condition mentioned was to give Mr. Adelsperger an answer by Thursday afternoon. (Exhibit 20, Joint Exhibit Book)

On Wednesday, June 9, 2010, Rodriguez offered the requested $8,000 and asked that the settlement agreement be prepared and placed on file with the Bankruptcy Court prior to his sending a status report to the Indiana Court of Appeals which was due on June 15, 2010. (Exhibit 21, Joint Exhibit Book) No response was received from Mr. Adelsperger by Thursday, June 10, 2010, so a subsequent email was sent to him on that day, to which he responded that he would get back once he contacted the Trustee. (Exhibit 22, Joint Exhibit Book) On Monday, June 14, 2010, at 11:07 a.m., Mr. Adelsperger advised that they had solicited another offer of $9,000 from Mr. Wehner, and that now the Trustee wanted to open a closed bidding process. (Exhibits 23, M, Joint Exhibit Book) The bids were not due until noon Thursday, June 17, 2010, and shortly thereafter the winning bid had to be funded in less than 24 hours, by Friday at noon. (Exhibits 23, M, Joint Exhibit Book)

Rodriguez bid $16,000 on June 16, 2010, and objected to the process stating that the

paperwork for approval should be submitted to the Court before deposit into the trust account was made, and that there was no reason for the short notice as the appeal had already languished for over a year. (Exhibit 25, Joint Exhibit Book) On June 17, 2010, Mr. Adelsperger advised that Rodriguez's bid was the highest and that he could now have until Monday noon (June 21), instead of Friday noon, to deposit the full sum. (Exhibit R, Joint Exhibit Book)  On June 21, 2010, counsel for Rodriguez advised that his client would have the full $16,000 available on July 5, 2010, well past the June 21 deadline. (Exhibit S, 25, Joint Exhibit Book)

On June 25, 2010, the Trustee filed her Second Application to Approve Compromise requesting the Court to approve the acceptance of $9,000, instead of the original $4,000, and to dismiss the pending appeal. (transmitted record document 2-1, pp. 64-68; doc. # 116 docket report p.11of 98) On July 16, 2010, Rodriguez filed his Objection to that Second Application. (transmitted record document 2-1, pp. 76-84; doc. # 118 docket report p. 11 of 98) A stipulation of facts, witnesses and exhibits was filed on September 3, 2010. (transmitted record document 2-1, pp.85-90; doc. # 124 docket report p. 12 of 98)

Trial was held on September 8, 2010, and only the Trustee and Rodriguez testified live. The Joint Exhibit Book was admitted into evidence. (trial transcript filed October 27, 2010) At trial, the Trustee testified that after receiving the Memorandum from VanGilder, she concluded that her original opinion as to the value of the appeal was correct, such that she "should take whatever money I could get for it." (trial transcript p. 14)

The Trustee then personally contacted Mr. Warsco, counsel for the Wehners, to see if the original $4,000 was still on the table, which it was. She then instructed Mr. Adelsperger to prepare the paperwork to accept the Wehners' offer. (trial transcript p. 15)  Later, after she was

advised of Rodriguez's offer of $8,000, she instructed Mr. Adelsperger to contact Mr. Warsco and he obtained a bid of $9,000. (trial transcript p. 15)

At this point in the Trustee's testimony, she had only given Mr. Rodriguez, an unsecured creditor, an opportunity to bid one time, and that was for the first time on June 7, 2010, and now the bidding process was to be concluded on June 17, 2010. After just 2 bids, one from Rodriguez and one from Wehner, Ms. Kleven testified that ". . . . I was tired of going back and forth. Let's put a bidding procedure in place." (trial transcript p. 16)

When the Trustee was asked why Mr. Rodriguez was not given an opportunity to bid before she agreed once again to accept the Wehners' $4,000, she responded that she did not recall. (trial transcript p. 22) Neither did the Trustee recall that Mr. Rodriguez had earlier offered the same $4,000, and had offered to let the estate keep the appeal at no cost to the estate. (trial transcript p. 24) The Trustee next testified that she authorized Mr. Adelsperger to recommend the
$8,000 figure for settlement and payment by Mr. Rodriguez. (trial transcript p. 25) However, the Trustee then stated that there was no requirement for that $8,000 to be paid in either twenty-four or forty-eight hours, as compared to the bidding process she later set up requiring immediate payment. (trial transcript p. 25) The Trustee further testified that in making her decision not to appeal, she relied upon the Memorandum provided to her by independent counsel for both conclusions of law and fact. (trial transcript p. 33)

## Analysis

The issue for review is whether the Bankruptcy Court erred when finding that the Trustee, by seeking the advice of outside counsel on the merits of the state court appeal and

9

utilizing a bidding procedure wherein bids were required to be submitted and funds were required to be deposited by a date certain, exercised an appropriate use of her business judgment. Rodriguez objects to the Trustee's acts of rejecting his bid of $16,000 for the right to prosecute the state court appeal and accepting a bid of $9,000 to dismiss that appeal.

Pursuant to Bankruptcy Rule 8013, this Court must review the Bankruptcy Court's findings of facts under the "clearly erroneous" standard and the Bankruptcy Court's legal conclusions must be reviewed de novo. See Fed. R. Bankr. P. 8013; Kauthar SDN BHD v. Tongasat (In re Rimsat, Ltd.), 230 B.R. 362, 364 (N.D. Ind. 1999).

Contrary to Rodriguez's assertion, the Bankruptcy Court and the Trustee have not focused on whether the Trustee could have done things differently regarding the prosecution of the underlying appeal. In fact, the court specifically noted that the Trustee should not second guess the procedure she chose in settling the disposition of the appeal. (See Trial Transcript p. 68, lines 12-24). The focus of both the Bankruptcy Court and the Trustee was whether the Trustee's decision to settle the litigation was within the proper scope of her business judgment. (Id. at lines 5-11). The sole issue before this Court is whether the Bankruptcy Court erred when it decided that the compromise was in fact an appropriate exercise of the Trustee's judgment.

Rodriguez argues that the compromise was not a reasonable exercise of the Trustee's business judgment for two reasons: Rodriguez believes that the appeal has more value; and Rodriguez did not like the bidding procedure utilized by the Trustee. Rodriguez spends a significant portion of his brief arguing that the state court appeal does in fact have merit and the Trustee and her outside counsel's analysis is wrong. Rodriguez attempts to bring to the Court's attention the facts and law at issue in the state court appeal. However, the state court appeal is

10

not before this Court and, thus, this appeal is not another opportunity for Rodriguez to try his state court case. Rather, the Court must decide whether the Trustee, by seeking the advice of outside counsel on the merits of the appeal, has exercised an appropriate use of her business judgment in entering into the present compromise.

While the Bankruptcy Court found that the Trustee did not make an adequately informed decision concerning the First Compromise, the Trustee sought the advice of outside counsel so that she could rectify these issues. With respect to the First Compromise, The Bankruptcy Court found that the Trustee did not fully investigate the matter because she did not consult with Debtor's state court counsel regarding the facts surrounding the appeal and the judgment entered. With respect to the present compromise, however, the Trustee hired outside counsel to give her an opinion as to the merits of the appeal. The Bankruptcy Court found that by doing this, the flaws in the Trustee's original motion were overcome. Rodriguez simply disagrees with the conclusion reached by the outside counsel, and therefore argues that the Trustee has not exercised appropriate business judgment. However, just because Rodriguez disagrees with the analysis of the Trustee and her counsel does not mean that the compromise was not appropriate or in the best interests of the estate.

A court may approve a settlement if it is in the "best interests of the estate" and if it is "fair and equitable." In re Davidson, 402 B.R. 877, 880 (Bankr. S.D. Ind. 2009). "Fair and equitable means that the "settlement reasonably accords with the competing interests' relative priorities." Id. The "best interests of the estates" test has been explained by the Seventh Circuit as follows:

> Bankruptcy courts may approve…settlements that are in the best interests of the estate. The linchpin of the 'best interests of the estate' test is a comparison of the

> value of the settlement with the probable costs and benefits of litigating. Among the factors the court considers are the litigation's probability of success, complexity, expense, inconvenience, and delay, 'including the possibility that disapproving the settlement will cause wasting of assets.' As part of this test, the value of the settlement must be reasonably equivalent to the value of the claims surrendered. This reasonable equivalence standard is met if the settlement falls within the reasonable range of possible litigation outcomes. Because litigation outcomes cannot be predicted with mathematical precision, only if a settlement falls below the low end of possible litigation outcomes will it fail the reasonable equivalence standard. See Doctors Hospital of Hyde Park, Inc. v. Lasalle Bank National Assoc., 474 F.3d 421, 426 (7th Cir. 2007).

The Trustee notes that Rodriguez incorrectly cites to Protective Committee for Independent Stockholders of TMT Trailer Ferry v. Anderson, 390 U.S. 414, 424 (1968), for the proposition that the court must apprise itself "of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated." In In re Foundation for New Era Philanthropy, 1996 Bankr. LEXIS 1891 *17, (Bankr. E.D. Penn. 1996), the court noted that this was the standard of review under the former Bankruptcy Act. The current standard is the best interest of the estate test as articulated in Doctors Hospital of Hyde Park, Inc. v. Lasalle Bank National Assoc., 474 F.3d 421, 426 (7th Cir. 2007), and discussed above.

Further, it should be noted that "[c]ourts have also added the ingredient that 'the law favors compromise.'" In re Foundation for New Era Philanthropy, 1996 Bankr. LEXIS 1891 at *19. "The notion that a bankruptcy court upon review of a challenge to a settlement does not attempt to substitute its judgment for that of the trustee reflects the general roles of the court and trustee under the Code." Id. at 20. The court must only review the issues "to see if the settlement falls below the lowest point of reasonableness," and not substitute its own judgment for that of the trustee. In re Martin, 212 B.R. 316, 319 (8th Cir. 1997). "Because a bankruptcy judge need only canvass the issues and does not determine and rule upon disputed facts and questions of

law, a trial or 'mini trial' on the merits is not required." In re Spielfogel, 211 B.R. 133, 144 (Bankr. E.D.N.Y. 1997).

When considering the range of possible litigation outcomes, "estimates are acceptable in this context; no one would ever settle a case if the claim and amount of recovery could be established with 100% certainty." Doctors Hospital of Hyde Park, Inc., 474 F.3d at 430. "Parties assess settlement offers by taking stock of the information they have, even if preliminary, and considering whether the possibility the case will improve is worth the risk of losing the settlement offer." Id. The "best interests of the estates" test is also "a comparison between the value of the settlement and the probable costs and benefits of litigating." Id.

In In re C.R. Stone Concrete Contractors, Inc., 346 B.R. 32, 46 (Bankr. Mass. 2006), the court noted that "when augmentation of an asset involves protracted investigation or potentially costly litigation, with no guarantee as to the outcome, the trustee must tread cautiously – and an inquiring court must accord him with wide latitude should he conclude that the game is not worth the candle." The court also noted that it is the trustee's duty "to reach an informed judgment, after diligent investigation as to whether it would be prudent to eliminate the inherent risks, delays, and expense of prolonged litigation in an uncertain case." Id. at 47. The court found that the trustee failed to interview all of the potential witnesses regarding the circumstances surrounding the Debtor's claims in a pending adversary proceeding and thus did not conduct a diligent investigation.

In the present case, the Trustee sought the advice of outside counsel after the Bankruptcy Court denied the First Compromise. Her counsel opined that there was little merit to the appeal and the Trustee decided to proceed with the initial settlement so as to obtain what she could for

13

the estate. The fact that Rodriguez disagrees with the opinion reached by Trustee's counsel is irrelevant. What is relevant is that the Trustee took steps to investigate the appeal by hiring outside counsel to give her a second opinion as to the likelihood of success. Thus, the present case is unlike C.R. Stone, because the Trustee did conduct a diligent investigation into the claims of the state court appeal. Additionally, the settlement is within the reasonable range of possible litigation outcomes because there is a strong possibility that if the Trustee were to prosecute the appeal she would lose, since it is the opinion of Trustee's counsel that the appeal has little merit.

Rodriguez also cites to In re Central Ice Cream Co., 836 F.2d 1068 (7th Cir. 1987) and In re West Pointe Properties, L.P., 249 B.R. 273 (Bankr. E.D. Tenn. 2000), and argues the court should not to give deference to the Trustee's decision to proceed with the compromise. In those cases, the courts found that the trustees failed to conduct an adequate investigation and thus gave little weight to their opinions. Id. In this case, the Trustee was initially told by the Bankruptcy Court that she did not thoroughly investigate the claims subject of the appeal. However, she then hired outside counsel for a second opinion before proceeding with the settlement. Therefore, this Court will give deference to the Trustee's opinion as bankruptcy judges are not to substitute their judgment for that of the Trustee. See C.R. Stone, 346 B.R. at 46. Rodriguez argues that the Trustee used hasty bidding procedures and did not maximize the value to the estate. Rodriguez emphasizes that he offered to pay $16,000.00, a bid that the Trustee initially accepted as the highest bid. However, Rodriguez was unable to deposit the funds within the time frame required. Therefore, the Trustee accepted the $9,000.00 offer from the Wehners which was fully funded. Rodriguez argues that the $9,000.00 offer is "nuisance value" because he would have given the estate more had the Trustee accepted his promise to pay $16,000.00.

Rodriguez cites to In re Spielfogel, 211 B.R. 133 (Bankr. E.D.N.Y. 1997), and alleges that the Trustee has chosen not to maximize the claim or appeal against the Wehners. However, it is clear that after further investigation by obtaining an opinion from outside counsel, the Trustee determined that the appeal has no merit. The Trustee agreed to a bidding procedure that allowed both parties to submit their highest and best offer. Rodriguez lost the bid because he was unable to deposit the funds. Rodriguez wanted the Trustee to risk losing the $9,000.00 bid and trust that he would be able to deposit the $16,000.00 at a later date. The Trustee accepted the Wehner's bid since they complied with the bidding procedures and it was a guaranteed $9,000.00, not a promise to pay $16,000.00.

The Bankruptcy Court did not have to find that "the settlement constitutes the best result obtainable." In re Martin, 212 B.R. 316, 319 (8th Cir. 1997). "Rather, the court need only canvass the issues to determine that the settlement does not fall 'below the lowest point in the range of reasonableness.'" Id. In the present case, the outcome of the bidding war was well within the range of reasonableness, even if it might not have produced the best result obtainable.

Finally, Rodriguez argues that the Trustee and the Bankruptcy Court should have considered the fact that the appeal could be funded by him by using counsel also chosen by him, at no cost to the estate. The Bankruptcy Court specifically addressed the reason why this was not considered:

> I appreciate your generosity, but the context or the sub-text within that statement implies that because you are willing to do so the Trustee is precluded from doing anything else, retaining anyone else, doing anything other than hiring you to do it for free. I have substantial problems with both the initial statement and its sub-text. My initial problems with the statement is that it implies that lawyers are fungible. There's no difference between you and Mr. Adelsperger and Mr. Van Gilder; you're all the same. We know that's not the case…It, in addition to the implications that it has that lawyers are fungible, it ignore[s] the fact that even

15

> though you might be willing to prosecute or any lawyer might be willing to prosecute something, you know, for free, it ignores the reality that litigation is not a costless endeavor. And, again, if nothing else, it takes time and the Trustee has to balance litigation or appeals in light of the commandment to expeditiously close the Estate…It may make more sense to forego lengthy litigation for a dollar or two today than to continue to prosecute them. It also seems to, I think, inappropriately intrude upon the Trustee's ability to hire counsel of their choice…I also should point out that, you know, even if Counsel isn't going to charge anything, that doesn't mean the Court won't. We're all aware of the ability of the Court, be it Trial Court or an Appellate Court, to impose sanctions upon litigants and their lawyers if they feel that something lacks sufficient merit.

See Trial Transcript, pp. 71-72.

There is no support for Rodriguez's proposition that the Trustee should be forced into disposing of an asset in a certain way simply because someone is offering to pursue it for free. Rodriguez cites <u>Carpenter v. Farm Credit Services of Mid-America</u>, 654 N.E. 2d 1125 (Ind. 1995) and argues that the Court should consider Rodriguez's constitutional right to prosecute his appeal. This case actually cites to <u>Ocean Cape Hotel Corp. v. Masefield Corp.</u>, 164 A.2d 607, 611 (New Jersey, 1960), which states "[m]ere adjudication of the bankruptcy and appointment of the trustee do not deprive the bankrupt of his right to continue the prosecution of the action. If he considers it to be in the best interests of the bankrupt's estate, the trustee may allow the action to proceed, unaffected by the bankruptcy adjudication." <u>Id</u>. Clearly, it is still the Trustee's job to determine how the assets should be administered, not the Debtor or Appellants.

Considering all of the arguments stated above, this court finds that the Bankruptcy Court did not err when it found that the compromise is in the best interests of the estate and a proper exercise of the Trustee's judgment and discretion. Accordingly, the decision of the Bankruptcy Court will be affirmed.

## Conclusion

On the basis of the foregoing, the Bankruptcy Court's decision is hereby AFFIRMED.

Entered: February 23, 2011.

s/ William C. Lee<br>
William C. Lee, Judge<br>
United States District Court